UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANTHONY CLIFFORD GATES,

        Petitioner,

                                        Case No.  1:13-cv-713
v.                                     Hon. Robert J. Jonker

BONITA J.  HOFFNER,

        Respondent.

_____/


**REPORT AND RECOMMENDATION**

      Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has

filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.[1]

    **I.**        **Background**

      Following a jury trial in the Calhoun County Circuit Court, petitioner was convicted

of first-degree home invasion, M.C.L. § 750.110a(2) and domestic violence, M.C.L. § 750.812.

*People v.  Gates*, No.  281205, 2009 WL 211891 at *1 (Mich. App. Jan. 29, 2009).   Petitioner was

sentenced as an habitual offender, second offense, M.C.L. § 769.10, to concurrent sentences of 8 to

30 years imprisonment for first-degree home invasion and 120 days in jail for the assault.  *Id.*

      The Michigan Court of Appeals summarized the underlying facts as follows:

      The facts presented at trial established that defendant, at about 3:00 p.m. on
January 1, 2007, called the victim, his exgirlfriend, and asked if they could meet to
talk. The victim told defendant she could not meet, but that she would call defendant

---

[1] The convictions at issue in this habeas action arose from crimes committed in January 2007 in
Calhoun County Circuit Court No. 2007-145 FH.  *See* State Court docket sheet (ECF No. 16-1, PageID.381).
Petitioner has filed a separate habeas action contesting convictions which arose from crimes committed in
April 2007 in Calhoun County Circuit Court No. 2007-2155 FH.  *See Gates v. Hoffner*, 1:13-cv-715 (ECF
No. 17-1, PageID.366).

when she returned home. When she returned home at 9:30 p.m., defendant had left three voice messages for her including, "You f-king bitch just call me," and "Please call me back don't you know shut me out. Call me back." The victim spoke with defendant later that night at 11:00 p .m. and told defendant not to come by the house. The victim and defendant previously shared her home for the 3-½ years they were dating, but defendant moved out of the residence and subsequently returned the house keys to the victim when their relationship ended in November 2006. Before the victim went to bed, she heard defendant approach the house in a van. Defendant walked up to the house from the parked van three times, knocking on several doors, requesting to be let inside the home. Using a cordless telephone, the victim called her friend, who called the police and remained on the telephone with the victim during the incident. The victim had hoped defendant "would just get tired of knocking and leave," but instead, defendant entered the home while the victim was upstairs near her bedroom. She "freaked out" and yelled at defendant repeatedly asking him "Why are you here? How did you get in here? Get out!" When defendant climbed the stairs to approach the victim, the victim raised her arm and stretched it out to maneuver to get past defendant; defendant grabbed her arm and pushed her, causing her to lose her balance and fall onto her bed. He said to the victim "I just want to talk to you." The victim got up from the bed and walked past defendant downstairs; defendant followed her asking the victim "not to call the police on him" as he "just wanted to talk." When the police arrived at the home, they found defendant intoxicated, pleading with the victim, kneeling on the kitchen floor with hands that were bloodied from an unrelated previous incident. The victim had checked all of the doors that evening and was certain that they were locked, so she was unclear at trial how defendant entered the home. There were no broken windows, but a tire iron was found near one of her doors and three witnesses, the responding police officer, the victim and the victim's friend all expressed their belief that the door had been jimmied with the tire iron.

*Id.*

   Petitioner, through counsel, raised one issue in his direct appeal to the Michigan Court of Appeals:

  I.  Defendant-Appellant is entitled to a new trial where the trial court denied the requested jury instruction as to a lesser offense.

Defendant's Brief (ECF No. 16-7, PageID.988). The Michigan Court of Appeals affirmed the trial court, finding that "the denial of the instruction was harmless error." *Gates*, 2009 WL 211891 at *3.

In a pro per application to the Michigan Supreme Court, petitioner sought leave to appeal the jury instruction claim, as well as two new issues of ineffective assistance of counsel:

I.   Defendant-Appellant was denied the effective assistance of appellate counsel due to appellate counsel's failure to raise the issue of trial counsel's ineffectiveness in failing to require prosecution to produce the taped 911 phone conversation and answering machine tape pursuant to MRE 1002 "best evidence" Rule in lieu of complainant's testimony.

II.  Defendant-Appellant was denied the effective assistance of appellate counsel as counsel did not raise the issue that trial counsel did not compel production of the lease to complainant's residence in accordance with MRE 1002 when complainant gave in-court testimony stating defendant-appellant was not on the lease when in fact he was.

*See* Application for leave, New Issues I and II (ECF No. 16-8, PageID.1016-1025). The Michigan Supreme Court denied his application for leave to appeal on June 23, 2009, *People v. Gates*, 483 Mich. 1113, 766 N.W.2d 823 (2009), and his motion for reconsideration, *People v. Gates*, 485 Mich. 931, 773 N.W.2d 699 (2009). Gates filed a petition for writ of certiorari to the United States Supreme Court, which was denied on June 1, 2010. *Gates v. Michigan*, 560 U.S. 945 (2010).

On May 12, 2011, Petitioner filed a motion for relief from judgment in the Calhoun County Circuit Court on the following grounds (in his words):

I.   Defendant Gates was erroneously charged and convicted under MCL 750.110a2 where he was an actual resident of the home with the complainant. US Const Am XIV.

II.  The evidence is insufficient to sustain defendant Gates' conviction of home invasion; alternatively, the verdict is against the great weight of the evidence; denial of directed verdict; it would be a denial of due process and a miscarriage of justice to allow defendant Gates' conviction to stand. US Const Am XIV.

III. Defendant Gates was denied due process of law in violation of his 14th Amendment rights and a fair and impartial trial given the police misconduct.

IV. Did the prosecution's improper argument; Brady violations and 5th Amendment violation deny the defendant-appellant gates a fair and impartial trial?

V. Trial judge abuse of discretion where judge denied defendant Gates' motion for mistrial.

VI. Mr. Gates was denied his state and federal right to effective assistance of counsel on appeal due to appellate counsel Rust's failure to raise all constitutional claims in the original brief on appeal as requested by defendant-appellant Gates. US Const. VI; Mich Cons 1963, Art 1, §§ 17, 20.

    (A) Failed to timely file appellate brief and missed oral arguments

    (B) Violation of Standard 9, charging for transcripts and withholding until after 84 day deadline had expired, denying right to file Standard 4 brief.

    (C) Counsel failed to raise meritorious constitutional claims of error;

VII. Defendant-appellant Gates was denied his Sixth Amendment right to effective assistance of trial counsel where there is newly discovered evidence that his trial attorney failed to investigate and produce witnesses on his US Const. Am VI; Mich Const 1963, Art I, §§ 17, 20.

    (A) Failed to prove actual resident;

    (B) Failed to object to prosecutor misconduct, Brady violation;

    (C) Failed to investigate, failed to obtain and present photos of scene, phone records and obtain expert witness;

Motion for relief from judgment (ECF No. 16-13, PageID.1386-1387).

The trial court denied the motion stating in pertinent part:

> As the people so cogently point out in their response, there is no factual basis for any of the defendant's various grounds for relief and each is lacking in legal merit. In any event, each alleges grounds for relief which were known after trial and each could have been raised on appeal from the defendant's convictions and sentences. The defendant has failed to demonstrate actual prejudice from the alleged irregularities pursuant to MCR 6.508(D)(3)(b) and fails to meet his burden of establishing entitlement to relief where his only argument for good cause for failure to raise these grounds is to claim that his appellate counsel was ineffective for not raising them. As the people point out, however, the failure of appellate counsel to file an appeal which includes meritless arguments does not equate to ineffective counsel and thus defendant's argument that ineffective appellate counsel is sufficient evidence for the court to conclude good cause has been shown to excuse the failure to raise defendant's alleged grounds on appeal must fail.

> Since defendant has clearly failed to meet his burden of establishing entitlement to the relief requested in his motion for relief from judgment, the court may not grant the defendant the relief he requests, MCR 6.508(D). The defendant's motion is, therefore, denied.

Order (June 23, 2011) (ECF No. 16-16, PageID.1560).

Petitioner raised the same issues in a delayed application for leave to appeal to the Michigan Court of Appeals, which that court denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *See* Application (ECF No. 16-9, PageID.1050); *People v. Gates*, No. 310832 (Nov. 13, 2012) (ECF No. 1049). On June 25, 2013, Petitioner's application for leave to appeal to the Michigan Supreme Court was denied because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Gates*, 494 Mich. 868, 832 N.W.2d 223 (2013).[2]

---

[2] Gates filed a successive motion for relief from judgment which the trial court dismissed as not permitted under Michigan law. *See* Order Returning Successive Motion (May 22, 2013) (ECF No. 16-19, PageID.1610-1611). Gates filed the present habeas action on July 1, 2013. This habeas action does not include matters raised in the successive motion. In this regard, the Rule 5 materials include affidavits from both the Michigan Court of Appeals and the Michigan Supreme Court stating that his appeal of this order was pending months after he filed this action. *See* Zimmer Aff. (Michigan Court of Appeals No. 316976 was still pending as of November 7, 2013) (ECF No. 16-11); Royster Aff. (the appeal taken in Michigan Court of

In his petition for writ of habeas corpus, Gates raised eight issues (in his words "Statement of questions presented") as follows:

I.   Did the trial court's refusal to provide the requested lesser included offense instruction deny the petitioner the right to present a defense, rendering his trial fundamentally unfair?  US Const. Am XIV.

II.  Was petitioner Gates erroneously charged and convicted under Mich. Comp. Laws 750.110a(2) where he was an actual resident of the home with the complainant?  U.S. Const.  Am XIV.

III. Was the evidence insufficient to sustain petitioner Gates's conviction of home invasion?; Alternatively, was the verdict against the great weight of the evidence?; Was petitioner denied a directed verdict?; Is it a denial of due process and a miscarriage of justice to allow petitioner Gates's convictions to stand?  U.S. Const.  Am XIV.

IV.  Was petitioner Gates denied due process of law in violation of his 14th Amendment rights and a fair and impartial trial due to police misconduct?

V.   [Prosecutorial misconduct]

     A.   Was the prosecution's improper arguments misconduct?;

     B.   Were there Brady violations?; and,

     C.   Was petitioner denied a fair and impartial trial in violation of his 5th Amendment right?

VI.  Did the trial judge abuse his discretion where he denied petitioner's motion for mistrial?

VII. Was petitioner denied his state and federal constitutional right to effective assistance of counsel on appeal due to appellate counsel Rust's failure to raise all constitutional claims in the original brief on appeal as requested by Petitioner?  U.S. Const.  Am VI; Michigan Const.  1963, Art.  1, §§ 17, 20.

---

Appeals No. 316976, docketed in the Michigan Supreme Court as No. 148309 was still pending as of March 26, 2014) (ECF No. 16-12).

A. Did Attorney Rust fail to timely file appellate brief and miss oral argument?

B. Was Attorney Rust in violation of Standard 9, for charging for transcripts and withholding same until the 84-day deadline had expired, denying petitioner the right to file a Standard 4 brief?

C. Did counsel fail to raise meritorious constitutional claims of error?

VIII. Was petitioner denied his Sixth Amendment right to the effective assistance of trial counsel where there is newly discovered evidence that his trial attorney failed to investigate and produce witnesses on his behalf? U.S. Const. Am VI; Mich. Const. 1963, Art 1, §§ 17, 20.

A. Where counsel failed to prove residency?

B. Where counsel failed to request an instruction that petitioner could not "break" into a home he had a right to enter?

C. Where counsel failed to object to prosecutorial misconduct?

D. Where counsel failed to investigate, failed to obtain and present photos of the scene, phone records and obtain expert witnesses?

*See* Petition (ECF No. 1); Memorandum (ECF No. 2, PageID.65-67).

## II. Procedural default

## A. Legal standard

The doctrine of procedural default applies to all of petitioner's remaining claims except for Issue I (addressed in his direct appeal) and Issue VII (alleging ineffective assistance of appellate counsel (IAAC)). Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim

is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The state procedural rule must be "firmly established and regularly followed" at the time it was applied to support application of the doctrine. *Ford v. Georgia*, 498 U.S. 411, 424 (1991).

"A habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default." *Shahideh v. McKee*, 488 Fed. Appx. 963, 965 (6th Cir. 2012), citing *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir.2010). To make this determination, the Court looks to the last reasoned state court opinion explaining the rejection of petitioner's claims. *See Guilmette*, 624 F.3d at 291; *Skinner v. McLemore*, 425 Fed.Appx. 491, 495 (6th Cir. 2011). "The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine." *Davila v. Davis*, -- U.S. --, 137 S. Ct. 2058, 2064 (2017).

## B.     Application of procedural default doctrine

Here, the trial court denied petitioner's claims for relief from judgment as to Issues II, III, IV, V, VI and VIII pursuant to MCR 6.508(D)(3)(b), because the alleged grounds for relief "were known after trial and each could have been raised on appeal from the defendant's convictions and sentences." Order (June 23, 2011) at PageID.1560). MCR 6.508(D) was a "firmly established and regularly followed" state procedural rule at the time it was applied to petitioner. *See, e.g., Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). This ruling, which is the last reasoned state

8

court opinion explaining the rejection of petitioner's claims, is based upon an independent and adequate state procedural ground.  Accordingly, petitioner's claims Issues II, III, IV, V, VI and VIII are procedurally defaulted.

### C.      Cause and Actual Prejudice

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.  "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Here, petitioner contends that his appellate counsel was ineffective for, among other things, failing to raise the additional claims set forth in his motion for relief from judgment. Ineffective assistance of counsel may constitute cause for excusing a procedural default, but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment.  *Id.  See Davila*, 137 S. Ct. at 2065 ("It has long been the rule that attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel.").  If successful, such a claim could serve as both an independent claim of error for IAAC and as cause to excuse the procedural default of Issues II, III, IV, V, VI and VIII.  However, for the reasons discussed in § IV.B., petitioner has not demonstrated that his appellate counsel was constitutionally ineffective. Petitioner has neither demonstrated cause for his procedural default nor an independent claim of IAAC.  For this reason, it is unnecessary for the Court to address actual prejudice.

9

### D.      Fundamental Miscarriage of Justice

Petitioner's failure to demonstrate cause prevents federal habeas review of these issues unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.    In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner offers no such new evidence that he is actually innocent of the crime for which he was convicted for the following reasons:

> The petitioner was a legal resident of 115 Clayton Avenue.  The Petitioner paid his rent and there was no eviction.  The Petitioner's consent came from the landlord to enter the property.

Memorandum at PageID.122. Although this claim of actual innocence arises from facts that were known at the time of trial, petitioner has attempted to expand the record to include additional

evidence which purports to support this claim, such as a copy of the lease. The Court denied petitioner's motion to expand the record in this habeas action because the lease was not admitted into evidence at trial. The crime of home invasion was established by the victim's testimony that she rented the house, that petitioner lived with her for about 3 1/2 years, that the relationship ended, and that petitioner moved out of her residence on November 4, 2006, approximately two months before he committed the criminal conduct in January 2007. *See* Order (ECF No. 33); Donnakay Owusu-Agyei trial testimony (petitioner rented the house, her name was on the lease, she made the payments on the lease, "one time" petitioner gave her $100 towards the rent, petitioner paid no rent from November 2006 through January 2007, and while the victim allowed petitioner to store some items at the house "because he didn't have a place of his own," she made it clear to petitioner that "he was no longer to enter [her] residence - in other words, come and go as he pleased") (ECF No. 16-4, pageID.638-639); *Gates*, 2009 WL 211891 at *1 ("The victim and defendant previously shared *her home* for the 3-½ years they were dating, but defendant moved out of the residence and subsequently returned the house keys to the victim when their relationship ended in November 2006.") (emphasis added).

Even if the Court had expanded the record, petitioner's argument that there was no home invasion because he was a "legal resident" of 115 Clayton is meritless, because he was not a party to the lease, which was executed on November 1, 2003 between the victim and her landlord. *See* Lease (ECF No. 9-1, PageID.240-242). In this regard, the term "legal resident" is not used in the statute. Rather, home invasion occurs when a person enters a dwelling "without consent,"[3]

---

[3] Petitioner was convicted of first degree home invasion which is defined as follows:

A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling *without permission* with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a

which "means without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling." M.C.L. § 750.110a(1)(c). As discussed, the victim was the lessee of the dwelling and lawfully in possession and control of it.

In summary, petitioner has failed to meet the fundamental miscarriage of justice exception.

Accordingly, his claims raised in Issues II, III, IV, V, VI and VIII are procedurally barred and not subject to federal habeas review. The Court will now address petitioner's claims raised in Issues I and VII.

### III.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, he must first fairly present the substance of his federal claims to all available state courts, thereby exhausting all state remedies. *See* 28 U.S.C. §2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971) ("once the federal claim has been fairly presented to the state courts, the

---

dwelling or enters a dwelling *without permission* and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

   (a) The person is armed with a dangerous weapon.

   (b) Another person is lawfully present in the dwelling.

M.C.L. § 750.110a(2) (emphasis added).

exhaustion requirement is satisfied"). In the present case, petitioner has exhausted all remedies in Issues II through VIII, but has failed to exhaust state remedies in Issue I, as discussed below.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 101-102 (2011) (internal quotation marks omitted). The federal habeas statute "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). This deferential standard "requires petitioner to show 'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), quoting *Harrington*, 562 U.S. at 103.

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id*. A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102. "If this standard is difficult to meet, that is because it was meant to be." *Id.*

Finally, "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

## IV.     Discussion

### A.     Lesser Included Offense Instruction (Issue I)

In his habeas petition, Gates contends that the Michigan Court of Appeals erred in when it decided that the trial court's denial of a lesser included offense instruction rendered the trial

unfair in violation of the Fourteenth Amendment. *See* Memorandum at PageID.73-79. However, this is not the issue he raised in the state court. Rather, in his direct appeal, petitioner's claim was based entirely on state law, whether petitioner was "entitled to a new trial where the trial court denied the requested jury instruction as to a lesser offense." Appellate Brief (ECF No. 16-7, PageID.988). Petitioner' state court appeal did not claim that his federal constitutional rights were violated; he claimed that the trial court abused of discretion in failing to give the jury instruction. *See* Appellate Brief at PageID.997-999. Accordingly, the Michigan Court of Appeals addressed this claim as brought under state law with no constitutional ramifications, stating in pertinent part:

> Defendant at trial requested that the lesser offense instruction for misdemeanor entry without owner's permission, MCL 750.115, see also CJI2d 25.4, be given as a necessarily lesser included offense to the charge of first-degree home invasion, MCL 750.110a(2). Defendant asserted that the lesser included offense instruction was proper because there was sufficient evidence that defendant did not intend to assault the victim, pushed the victim in self-defense when they encountered each other at the top of the stairs, and that defendant only wanted to talk to the victim. The defense also asserted that it was unclear if defendant needed to "break and enter" in order to enter the home, suggesting he may have entered with a key. The trial court declined to give the instruction. Defendant argues on appeal that the denial of this lesser offense instruction was an abuse of discretion.

> *       *       *

> The trial court abused its discretion when it failed to give the requested jury instruction on the lesser included offense of misdemeanor entry without permission, MCL 750.115, and only instructed the jury for the offenses of first-degree home invasion, MCL 750.110a(2), and assault, MCL 750.81(2).

> *       *       *

> In this case, however, the denial of the instruction was harmless error. Harmless error analysis applies to instructional errors involving lesser included offenses. *Gillis*, *supra* at 140 n. 18, 712 N.W.2d 419. Defendant bears the burden of demonstrating that the error resulted in a miscarriage of justice and it must affirmatively appear that it is more probable than not that the error was outcome determinative. *Cornell*, *supra* at 362-364, 646 N.W.2d 127. Upon a review of the entire cause, it is clear that the omitted lesser included offense instruction was not outcome determinative, because the jury independently established the disputed fact,

specifically whether an assault occurred, when it convicted defendant of domestic assault. On the record, defendant cannot show that it was more probable than not that the error was outcome determinative where the jury unequivocally concluded beyond a reasonable doubt that an assault took place. Defendant has not met his burden of proof to show that a miscarriage of justice occurred in this case. The denial of the instruction was harmless error and reversal of defendant's convictions is not required. MCL 769.26; MCR 2.613(A).

*Gates*, 2009 WL 211891 at *1-3.

In short, the issue which petitioner raised and exhausted on appeal was brought under state law. *See* Petition at PageID.1-6; *Gates*, 2009 WL 211891 at *1-3. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[A] state trial court's alleged abuse of discretion, without more, is not a constitutional violation." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Accordingly, this issue is not cognizable on federal habeas review.[4]

## B. IAAC (Issue VII)

In Issue VII, petitioner contends that his appellate counsel provided ineffective assistance by (1) failing to timely file the appellate brief which forfeited petitioner's oral argument;

---

[4] In his supporting brief, petitioner has bootstrapped a new federal constitutional argument to this claim, as though the federal constitutional argument was raised in his direct appeal. In his attempt to transform this state law claim into a new federal constitutional claim, Gates has created an unexhausted claim for habeas relief. A habeas petition containing unexhausted claims should be dismissed without prejudice to allow the petitioner to present his claims to the state courts. *See Rose v. Lundy*, 455 U.S. 509, 518-20 (1982). Here, petitioner cannot exhaust this claim because he has utilized his state court remedies by filing a direct appeal and a motion for relief from judgment under MCR 6.500 *et seq*. Where a petitioner has failed to give the state courts a full and fair opportunity to resolve the claim and cannot cure the failure because state court remedies are no longer available, the claim is subject to the procedural default doctrine. *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004). Petitioner has not demonstrated cause or prejudice to excuse the procedural default. Accordingly, even if the Court entertained this new argument and characterized it as a new habeas claim, federal habeas review of this claim is barred.

(2) withholding and charging for trial transcripts which deprived petitioner of the right to file a Standard 4 brief; and (3) failing to raise six additional claims on appeal. *See* Petition (ECF No. 1); Statement of Questions Presented (ECF No. 2, PageID.66).

In *Strickland v. Washington*, the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

With respect to the first prong, the court considers whether counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "In this regard, the court will 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).

With respect to the second prong, the court determines whether counsel's deficient performance was prejudicial. "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland v. Washington*, 466 U.S. at 693. "Even if a [petitioner] shows that particular errors of counsel were unreasonable, therefore, the [petitioner] must show they actually had an adverse effect on the defense." *Id*. The appropriate test is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

### 1.    Failure to Timely File Appellate Brief

The missed deadline precluded oral argument on appeal. There is no rule requiring appellate counsel to request oral argument. The relevant court rule, MCR 7.214(A), provides that "Oral argument of a calendar case is not permitted, except on order of the court, unless a party has stated on the title page of his or her brief in capital letters or boldface type "ORAL ARGUMENT REQUESTED". While oral argument has been considered a matter of trial strategy which may be waived, *see generally*, *Davis v. United States*, No. 1:06CR127, 2010 WL 2232411 at *3 (N.D. Ohio May 26, 2010), petitioner's appellate counsel did not make a strategic decision to waive oral argument in this case. Rather, counsel waived oral argument because he failed to file a timely brief. *See* Letter (May 12, 2008) (ECF No. 2-4, PageID.184). Nevertheless, petitioner was not prejudiced by the failure to have oral argument. Petitioner's appellate counsel adequately briefed the error on appeal and the Michigan Court of Appeals addressed the issue. Petitioner has not demonstrated a

reasonable probability that the outcome would have been different had appellate counsel presented oral argument. Accordingly, this claim of error should be denied.

### 2. Petitioner's Right to File a Standard 4 Brief

Petitioner contends that his constitutional rights were violated when he was not provided a trial transcript until after the deadline for filing a supplemental *pro se* Standard 4 brief. Petitioner's claim is without merit. As an initial matter, a criminal defendant has no federal constitutional right to self-representation on direct appeal from a criminal conviction. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 163 (2000). "[A] lay appellant's rights to participate in appellate proceedings have long been limited by the well-established conclusions that he has no right to be present during appellate proceedings, or to present oral argument." *Id.* at 163-64 (internal citations omitted). "Clearly, this holding contradicts the petitioner's assertion that there exists a constitutional entitlement to submit a *pro se* appellate brief on direct appeal in addition to the brief submitted by appointed counsel." *McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000), citing *Martinez*, 528 U.S. 152. *See Bowman v. Haas*, No. 2:10-CV-13385, 2015 WL 1540691 at *9 (E.D. Mich. April 7, 2015), cert. of appeal. denied, No. 15-1485, 2016 WL 612019 (6th Cir. Feb. 10, 2016) ("any failure by appellate counsel to assist in the submission of a pro se [Standard 4] brief on behalf of Petitioner does not present a constitutional question.").

With respect to petitioner's specific claim regarding appellate counsel's failure to provide him with the trial transcripts, he provides evidence that his appellate attorney improperly withheld the transcripts, provides no explanation of why the transcripts were necessary for filing a Standard 4 brief, and fails to explain how he was prejudiced by not receiving these transcripts. The court addressed a similar issue in *Bennett v. Curtain*, No. 10-14394, 2012 WL 5363571 (E.D. Mich. Oct. 30, 2012). In *Bennett*, the petitioner asserted that his appellate counsel violated his

19

constitutional rights when counsel refused to give petitioner access to the trial transcripts to prepare a Standard 4 Brief.

As an initial matter, the federal court in *Bennett* observed that "[w]e find no published Michigan opinion that considers whether an indigent defendant has a right to access trial transcripts that are in the possession of his or her appointed appellate counsel." *Id*. at 2012 WL 5363571 at *10. In rejecting this claim, the federal court quoted extensively from the petitioner's state appellate court decision which provided guidance regarding the history and purpose of Standard 4:

> The right to file a Standard 4 brief is an administrative creation, Administrative Order No.2004-6, not a constitutional right. A defendant has either a constitutional right to counsel or to proceed in propria persona, but not both. *People v. Adkins*, 452 Mich. 702, 720, 551 N.W.2d 108 (1996), *overruled in part on other grounds by People v. Williams*, 470 Mich. 634, 683 N.W.2d 597 (2004); *People v. Dennany*, 445 Mich. 412, 442, 519 N.W.2d 128 (1994).

> Administrative Order No.2004-6, Standard 4, provides in pertinent part:

>> When a defendant insists that a particular claim or claims be raised on appeal against the advice of counsel, counsel shall inform the defendant of the right to present the claim or claims in propria persona. Defendant's filing shall consist of one brief filed with or without an appropriate accompanying motion. Counsel shall also provide such procedural advice and clerical assistance as may be required to conform the defendant's filing for acceptability to the court.

> Although the phrase "clerical assistance" as set forth in Administrative Order No.2004–6 may imply allowing the defendant access to his or her transcript, the preamble of the order specifically states: "Criminal appellants are not constitutionally entitled to counsel's adherence to these guidelines." Although the better practice may be to allow defendants access to versions (electronic or otherwise) of the transcripts, there is no authority indicating that lack of access to the transcripts is a violation of a constitutional right in a situation where the defendant is represented by appointed counsel. In this case, defendant is represented by appointed appellate counsel, *Adkins, supra*; *Dennany, supra*, and his counsel has obtained a free copy of the trial transcripts, *Griffin, supra*. There is no constitutional requirement that defendant be given access to the transcripts to prepare and file a Standard 4 brief. Therefore, we hold that in this instance, defendant's constitutional rights were not violated.

*Bennett*, 2012 WL 5363571 at *10, quoting *People v. Bennett*, No. 284887, 2009 WL 383712 at *4-5 (Mich. App. Nov. 17, 2009) (internal footnote omitted).

The federal court in *Bennett* concluded that the petitioner was not entitled to habeas relief with respect to the his claims that appellate counsel failed to provide him with a copy of transcripts to prepare a Standard 4 Brief:

> Petitioner was represented by counsel on direct appeal. He thus had no constitutional right to submit a supplemental brief and no constitutional right to a personal copy of the transcript in order to do so. *See Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir.1973); *Gay v. Watkins*, 579 F. Supp. 1019, 1021 (E.D. Pa.1984). He also had no constitutional right to defense counsel's copy of the transcript, *Morin v. United States*, 522 F.2d 8, 9 (4th Cir.1975), " 'to comb the record in the hope of discovering some flaw.' " *United States v. Ilodi*, 982 F. Supp. 1046, 1048-49 (D. Md. 1997) (quoting *United States v. Glass*, 317 F.2d 200, 202 (4th Cir.1963)).

*Bennett*, 2012 WL 5363571 at *11.

In summary, petitioner had no federal constitutional right to file a Standard 4 Brief, and appellate counsel was not ineffective for failing to provide him with the trial transcripts for the purpose of preparing such a brief. Accordingly, petitioner's claim of error should be denied.

### 3. Failure to Bring Additional Claims

Next, petitioner contends that appellate counsel failed to bring additional claims on appeal. There is no duty for appellate counsel to "raise every 'colorable' claim suggested by a client" and that doing so "would disserve the very goal of vigorous and effective advocacy [.]" *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Strategic and tactical decisions regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Appellate counsel does not need to raise every nonfrivolous argument. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). "'[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence

of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). "Moreover, not only must the issue omitted be significant, but it must also be 'obvious.'" *Shelton v. McQuiggin*, 651 Fed. Appx. 311, 314 (6th Cir. 2016), citing *McFarland v. Yukins*, 356 F.3d 688, 711 (6th Cir. 2004) (listing factors relevant to determining whether appellate counsel was ineffective).

Here, the record reflects that petitioner's appellate counsel exercised reasonable professional judgment in determining which arguments to appeal. In a letter to petitioner, the appellate attorney explained:

Enclosed, please find a copy of your Brief on Appeal. The original has just been filed with the Court of Appeals.

As can be seen, the argument concern [*sic*] whether the trial court erred in declining to instruct the jury to a lesser offense as requested by your counsel.

Relative to your belief your attorney was ineffective for failing to introduce the telephone records: she [the victim] testified she had talked to you several times on that day by phone, admitted she had called you back and had talked to you just before you went over there. Thus, I did not find your attorney was ineffective for failing to introduce these records, which would merely have confirmed her testimony. While you indicated in the conversations she had invited you over there, you confirmed you did not testify because you could not completely remember what had happened that day because of your drinking. Furthermore, what evidence to present is generally considered trial strategy, which will not be second-guessed on appeal.

I also reviewed the scoring of your guidelines as you requested. In order to be successful on appeal, the court would have had to grant objections to both the scoring of OV 13 (25 points) and OV 4 (10 points) in your favor. While I believe a possible argument could be made to the scoring of OV 13, there is no argument relative to the scoring of OV 3, because in her impact statement Ms. Owusu-agyei indicated she had seen not only her own therapist, but her son's as well. Thus, I believe there is sufficient evidence to conclude the scoring of 10 points for OV4. If the argument for OV 13 were successful, it would have reduced your minimum

sentence range from 72-150 months to 51-106 months. Given that the court sentenced you to a minimum of 96 months, that sentence also fell within that reduced range. As such, even if the argument were successful, you would not be entitled to resentencing because it would be considered harmless error.

I also rechecked whether or not the misdemeanor charge of domestic assault was a proper basis for the charge of first degree home invasion. As I had indicated, the Court of Appeals has previously ruled that any assault, misdemeanor or felony, is sufficient satisfied [*sic*] the requirements for a first degree home invasion. *See People v. Sands*, 261 Mich App 158 (2004).

You also indicated you believe the trial court was biased against your attorney. In reviewing the transcripts, the court cautioned your counsel from repeating the answers of the witnesses, and repeatedly going over the same topics, instructing him to get to the point. I did not find this to be a reversible error, because part of the duties of a judge is to control proceedings. Given the applicable standard, which is an abuse of discretion, I did not find the court abused its discretion in this regard. Additionally, the bases for the mistrial motion (she [the victim] put the van in her name because you did not want to lose it if you went to jail and a question by the prosecution which was sustained [*sic*]) was minimal and I did not find the court abused its discretion in this regard.

Of course, as I also indicated, if you desire to raise this or any other issues you deem appropriate, a Standard 4 brief may be filed within 84 days from the filing of the brief. After that, it must be accompanied by a motion to permits [*sic*] its filing and there is no guarantee it would be granted. While I would be pleased to assist you in its filing, I cannot write it for you.

*See* Letter (May 7, 2008) (ECF No. 2-4, PageID.190-191).

One week later, appellate counsel responded to another written communication related to petitioner, stating in pertinent part:

I am in receipt of what seems to be a copy of something that appears to have been prepared by someone else on your behalf. By now, you should have received a copy of your brief as well as the letter explaining why various issues did not prove viable.

To briefly reiterate, you were arrested inside your former girlfriend's house. You were subsequently convicted of first degree home invasion and domestic violence. You were sentenced within the sentence guidelines. She testified you did not have permission to be in her house, despite having previously lived there and still having some of your possessions there. You did not testify at trial, partly because you had been drinking at the time and could not remember what had happened.

However, you nonetheless insisted she had invited you over and had telephone records which would substantiate that claim. You also did not like your attorney's job, because you felt that at most you should have been found guilty of a misdemeanor rather than the felony. You also thought your sentence was excessive for what had happened. You also noted you had disagreements with trial counsel and had different counsel on your second case, involving the same person. I would note your former girlfriend had obtained a PPO against you.

I disagree I became irate with you and did not tell you did not know what you were doing, only that much of the research you did was inapplicable to your situation, and attempted to explain why.

Secondly, I attempted to assist you on your concerns, addressing what you believed were issues and why I did not believe they were viable. Whether you choose to believe me or not is up to you. I was only being honest with you.

Third, as I pointed out, I am your appellate counsel, not your trial counsel. The Court of Appeals will not retry your case, despite your beliefs to the contrary. As I explained to you, they will not review the police reports, nor determine whether or not the witnesses lied. That is the function of the jury.

Fourth, it is not my function, nor the function of any attorney, to blindly raise every issue a client insists on, whether or not supported by the facts, or whether or not supported by the law. I thought we had thoroughly discussed your potential appellate issues. That you disagreed with my assessment and wanted certain issues raised because you 'felt' they were meritorious is an insufficient legal basis, nor is it an indication that I do not have your best interests in mind. I would also refer you to People v. Traylor 245 Mich App 460 (2001).

Finally. as I indicated, a pro-per brief is available to you to raise issues you deem relevant and I would still be please to assist you in its filing.

Letter (May 13, 2008) (ECF No. 2-5 (ECF No. 2-5, PageID.200).

As noted previously, in its order denying petitioner's motion for relief from judgment the trial court held "there is no factual basis for any of the defendant's various grounds for relief and each is lacking in legal merit." Opinion and Order on Defendant's Motion (ECF No. 16-16, PageID.1560).

Here, petitioner contends that his appellate attorney was ineffective because of counsel's failure to raise all of the issues requested by petitioner. In this regard, petitioner does not

24

identify these issues, other than referring to "concerns regarding residency and the lease." *See* Memorandum (ECF No. 2, PageID.120). As discussed, petitioner's residency argument is meritless, i.e., that he could not commit home invasion because he was a "legal resident" of the victim's house located (115 Clayton). He suffered no prejudice by appellate counsel's failure to raise this issue. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999). *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial").

Petitioner also suggests that appellate counsel was ineffective because he confused the facts of this home invasion (Calhoun County Circuit Court No. 2007-145) with the facts of the home invasion in another case (Calhoun County Circuit Court No. 2007-2155), stating that contrary to counsel's letters, "[i]n the present case, there was no PPO, and no claim that she invited Petitioner over, and there were no telephone records to substantiate that claim." Memorandum at PageID.120. Petitioner's new argument of "appellate counsel confusion" is not part of this habeas action. Moreover, his claims are disingenuous and inaccurate. While petitioner's conviction in this case did not involve the violation of a PPO, appellate counsel was not ineffective or confused by noting the existence of petitioner's second case and that his ex-girlfriend had obtained a PPO against him. With respect to whether petitioner was invited over to the residence, appellate counsel recounted petitioner's conflicting statements and the fact that he did not take the stand because he could not remember what happened. Finally, petitioner's contention that appellate counsel was ineffective due to "confusion" because there were no telephone records to substantiate his claim is disingenuous. Petitioner has raised the issue of telephone records in both the state and federal courts. First, in his application for leave to appeal to the Michigan Supreme Court, petitioner stated that appellate

counsel was ineffective for failing "to raise the issue of trial counsel's ineffectiveness in failing to require Prosecution to produce the taped 911 phone conversation and answering machine tape." *See* Application (ECF No. 16-8, PageID.1017-1021). Second, petitioner filed a motion in this case seeking to expand the record to include telephone records related to the date of the criminal acts. *See* Order (ECF No. 33).

In summary, petitioner has failed to demonstrate that his appellate counsel ignored significant, obvious issues which were clearly stronger than those presented. *Shelton*, 651 Fed. Appx. at 314; *McFarland*, 356 F.3d at 711; *Monzo*, 281 F.3d at 579. In addition, petitioner has failed to demonstrate any prejudice. *Strickland*, 466 U.S. at 693-94. Accordingly, this claim of error should be denied.

### V. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated: August 17, 2017     /s/ Ray Kent
             RAY KENT
             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).